IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES H. DENNIS | : | No. 10-233-1 |

**MEMORANDUM**

PRATTER, J.                                                                 AUGUST 31, 2020

James Dennis moves for release pursuant to 18 U.S.C. § 3582(c)(1)(A), claiming that his health conditions place him at a high risk of severe illness in the wake of COVID-19. Mr. Dennis also moves for a judicial recommendation for residential reentry or home confinement for the maximum period permitted by law because he has made constructive use of his time while incarcerated and has demonstrated his rehabilitative capacity. On these bases, Mr. Dennis seeks immediate release from FCI Morgantown. For the reasons that follow, the Court denies Mr. Dennis's requests.[1]

### BACKGROUND

In 2011, after this Court denied Mr. Dennis's motion to suppress, Mr. Dennis entered into a plea agreement in which he pled guilty to possession of 500 grams or more of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The Court denied his subsequent motion to withdraw his guilty plea and sentenced Mr. Dennis to 180 months of imprisonment, eight years of supervised release, a fine of $2,500, and a special assessment of $100. In 2013, this Circuit's Court of Appeals affirmed the Court's denial of the suppression motion.

Mr. Dennis is currently serving his sentence at FCI Morgantown. His current projected release date is September 3, 2021.

---

[1]      To the extent that Mr. Dennis seeks the appointment of counsel to aid him in his request for immediate release, the Court denies the request for the reasons set forth herein.

MOTION FOR RELEASE ON THE BASIS OF EXTRAORDINARY AND COMPELLING REASONS

I. **Background**

    a. **Mr. Dennis's Medical Concerns**

In support of his motion for release pursuant to 18 U.S.C. § 3582(c)(1)(A), Mr. Dennis identifies hypertension, high cholesterol, obstructive sleep apnea, and his obesity as medical conditions that render him at high risk of complications from COVID-19. Mr. Dennis claims he uses a CPAP machine to help him sleep, suffers from anxiety, and that he takes prescription medication to treat these health conditions.

    b. **BOP's Response to the COVID-19 Pandemic**

Because "maintaining safety and security of [BOP] institutions is [BOP's] highest priority,"[2] BOP has taken significant measures to protect the health of the inmates in its charge. BOP's Pandemic Influenza Plan has been in place since 2012. BOP HEALTH SERVICES DIVISION, *Pandemic Influenza Plan-Module 1: Surveillance and Infection Control* (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf (last visited Aug. 27, 2020). The protocol set forth in this plan established a multi-phase framework which requires BOP facilities to begin preparations in the face of a "[s]uspected human outbreak overseas." *Id.* at i. This plan further addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

BOP began planning for potential transmissions related to COVID-19 as early as January, during the same time in which it established a working group to develop COVID-19 policies. In accordance with the Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmissions. Now in Phase Seven of the Action Plan, every BOP institution requires all inmates to be secured in their assigned cells/quarters. Limited group gathering,

---

[2]     BOP, *Updates to BOP COVID-19 Action Plan: Inmate Movement* (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last visited Aug. 27, 2020).

with social distancing to the extent possible, is permitted to facilitate commissary, laundry, showers, telephone, and computer access. BOP is working to distribute face masks to all staff and inmates and encourages face coverings be worn in public spaces when social distancing is not feasible. Excluding medical treatment and similar exigencies, BOP has substantially limited the movement of inmates and detainees among its facilities. Official staff travel has also been cancelled, as has most staff training.

Newly admitted inmates are screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates are placed in quarantine for at least 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting the Centers for Disease Control and Prevention's (CDC) criteria for release from isolation. All facility staff are screened for symptoms in areas with sustained community transmission. Staff exhibiting a fever of higher than 100.4 degrees Fahrenheit are barred from entering the facility. Similarly, staff members exhibiting a stuffy or runny nose can be placed on leave. Only contractors performing essential services or the necessary maintenance on essential systems may access BOP facilities. Moreover, all volunteer visits have been suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer accessing BOP facilities will accordingly be screened for symptoms and risk factors. As of March 13, 2020, social and legal visits were suspended, with facilities permitting only case-by-case accommodations for visiting attorneys after the attorney has been screened for infection. BOP has increased telephone minute allowances to counteract these limits on in-person interactions.

As directed by the Attorney General, BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[3] Pursuant to the Coronavirus Aid, Relief, and Economic Security Act, BOP may also "lengthen the maximum amount of time for which the Director is

---

[3] This authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement.

3

authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). BOP has transferred more than 7,000 inmates to home confinement since March 26, 2020.

## II. Discussion

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). A defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his behalf, and the defendant may bring his motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).[4]

In the event the moving defendant complies with the exhaustion requirement, a court may reduce his term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with the Sentencing Commission's applicable policy statements,[5] and only after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. Pursuant to the Sentencing Commission's relevant policy statement, a court must also

---

[4] The parties do not dispute whether Mr. Dennis has met the exhaustion requirement. Thus, the Court does not address whether he has done so in this Memorandum.

[5] Despite Section 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," this Court recently concluded that "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, No. 03-271, ___ F. Supp. 3d ___, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it also "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at *4.

4

find that the defendant is not a danger to the safety of any person or the community as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13.2.

Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which provides guidance for defining the term. The application note provides, in pertinent part, that a defendant's non-terminal illness may constitute an extraordinary and compelling justification where "the defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *United States v. Rengifo*, No. 13-131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899) (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)).

### a. Whether Mr. Dennis's circumstances are sufficiently extraordinary and compelling.

Mr. Dennis asserts that his various health conditions, including hypertension, high cholesterol, sleep apnea, obesity and anxiety place him at high risk of severe illness were he to contract COVID-19. He also claims that it is difficult to social distance at FCI Morgantown. He also represents he has made constructive use of his time while incarcerated.

Before addressing the arguments and the evidence, it bears recognizing the unprecedented magnitude of the COVID-19 pandemic. Indeed, to the extent correctional facilities may have successfully dealt with past viruses and outbreaks of communicable diseases, those diseases pale in scope with the apparent magnitude and speed of transmission of COVID-19 and the challenges associated with it. This virus comes in the form of a world-wide pandemic, resulting in a declaration of a national emergency and states of emergency by many states, along with various forms of business closures or modifications to operations and stay-at-home orders. Without known effective treatment at this time, and vaccines months (or more) away, public health officials urge people to practice "social distancing,"[6] frequent and thorough hand-washing, avoidance of close contact with others, and wearing masks during public interactions—all of which are understandably difficult to implement in a correctional or detention facility. Certainly, the Court takes this critical health risk seriously. But as concerning as the common calamity of COVID-19 is, resolving the present motion still calls upon the Court to seriously take into consideration the limits imposed pursuant to 18 U.S.C. § 3582(c)(1)(A).

Turning to Mr. Dennis's particular concerns as they relate to COVID-19, the Court concludes that his status does not present extraordinary and compelling reasons to reduce his sentence. Mr. Dennis, for reasons explained below, has not shown that he suffers from a CDC-recognized and diagnosed medical condition that renders him sufficiently vulnerable to serious illness.

Mr. Dennis asserts that he is obese. The Government notes that Mr. Dennis's body mass index is a value of 30. The CDC recently reduced it danger threshold for obesity from a body mass index of 40 to one of 30. *See* CDC, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 26, 2020). Pursuant to the CDC's recent reduction, Mr. Dennis's

---

[6] Some have understandably suggested that this would be better thought of as "physical distancing," insofar as it is also strongly urged that maintenance of social interaction remains important for purposes of counteracting the negative emotional aspects of isolation.

6

obesity is now considered a factor that increases the risk of severe illness from COVID-19. Even so, the fact that Mr. Dennis suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean that extraordinary and compelling reasons justify the reduction of his sentence. *See United States v. D'Ambrosio*, No. 15-3, 2020 WL 4260761, at *4-5 (M.D. Pa. July 24, 2020) (denying motion to reduce sentence submitted by defendant concerned about the transmission of COVID-19 who exhibited obesity and high blood pressure).

The CDC also advises that "serious heart conditions," increase the risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 26, 2020). Although the CDC recognizes that individuals who have certain other conditions, including hypertension or high blood pressure, "might be at an increased risk," those conditions are not considered high risk at this time. *Id.* Nor does the CDC identify anxiety or sleep apnea conditions that increase the risk of COVID-19 complications.

In light of the evidence and CDC guidelines, Mr. Dennis does not demonstrate he is at a higher risk for severe illness due to COVID-19 in such a way that would rise to the level of extraordinary and compelling reasons for release. Mr. Dennis also claims that FCI Morgantown employs a practice where inmates who rely on CPAP machines are housed in rooms with no doors. Nevertheless, as of the filing of the Government's response, July 31, 2020, there are no reported positive cases of COVID-19 at FCI Morgantown. Thus, it appears that the facility has been responding to and defending against the threats of the virus in a vigorous and generally effective manner. *See United States v. Berry*, No. 10-051-1, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020) ("[G]iven the markedly restrained progression of the virus within FCI Schuylkill, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact."). Although the Court in no way trivializes Mr. Dennis's health conditions, such ailments, coupled with the present conditions at FCI Morgantown, do not establish extraordinary and compelling reasons justifying his early release. In the absence of

7

individualized risk, COVID-19, on its own, is not enough to justify release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Therefore, the Court finds that Mr. Dennis has failed to meet his burden in demonstrating that extraordinary and compelling reasons justify the reduction of his sentence. Accordingly, he is not entitled to relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

### MOTION FOR JUDICIAL RECOMMENDATION OF TRANSFER TO HOME CONFINEMENT OR RESIDENTIAL REENTRY

Mr. Dennis also seeks a judicial recommendation for transfer to home confinement or residential reentry primarily on the basis that he has used his time constructively while incarcerated, including by participating in drug rehabilitation and other programs as well as maintaining employment. Mr. Dennis claims his "work performance has been above average and his willingness to participate in extensive programming exemplifies a commitment to conform to society." Def.'s Mot. (Doc. No. 83), p. 2. Mr. Dennis cites to the First Step Act of 2018 and the Second Chance Act of 2007 in support. However, he does not cite to any specific portions of those statutes.

In response, the Government asks the Court to refrain from such a recommendation, because the BOP is most familiar with Mr. Dennis's inmate progress and institutional needs, and has the expertise and authority to make the appropriate decision.

A federal inmate's assignment to a residential reentry center or home confinement is governed by 18 U.S.C. § 3642(c), which states in relevant part:

> (1) In general.—The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the

> reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

18 U.S.C. § 3624(c). The statute further provides that the BOP must issue new regulations to ensure that assignments made under this statutory provision are conducted in a manner consistent with Section 3621(b) of the title. *See id.* § 3624(c)(6). Moreover, the statute states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." *Id.* § 3624(c)(4). Of particular relevance, 18 U.S.C. § 3621(b) states "a designation of a place of imprisonment under this subsection is not reviewable by any court."

The Court denies Mr. Dennis's request. The Court has no authority to require a designation of a place of imprisonment. *See* 18 U.S.C. § 3621(b). Moreover, to the extent that Mr. Dennis challenges a BOP placement decision under Section 3624(c), the Court may review whether the BOP abused its discretion in determining an inmate's placement at a future date. *See Kaiser v. Hollingsworth*, No. 16-1288, 2016 WL 6246308, at *4 (D.N.J. Oct. 25, 2016); *see generally Vasquez v. Strada*, 684 F.3d 431, 434 (3d Cir. 2012) ("The BOP exercises its authority pursuant to the Second Chance Act to determine individual . . . placements by applying the five factors set forth in section 3621(b). The sixth factor used by the BOP is participation and/or completion of Skills Development programs pursuant to 42 U.S.C. § 17541.") However, such a request for that review is traditionally fashioned as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and an inmate must exhaust his administrative remedies before petitioning for such relief from the Court. Mr. Dennis has not demonstrated he has exhausted his administrative remedies. For these reasons, the Court will refrain from making the requested recommendation at this time.

9

## CONCLUSION

For the foregoing reasons, the Court denies Dennis's motions for release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and for a judicial recommendation. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE